# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

FREDERICK D. THOERNER, III,

        Plaintiff,

        v.

UNITED STATES OF AMERICA,

        Defendant.

Case No. 3:14-cv-00191-SLG

## ORDER RE MOTION FOR SUMMARY JUDGMENT

Before the Court is the United States' Motion for Summary Judgment at Docket 12. The motion has been fully briefed.[1] Oral argument was not requested and was not necessary to the Court's determination. For the reasons set forth below, the motion will be denied.

## BACKGROUND

This case asks the Court to consider whether the United States Coast Guard's right to maintain an aid to navigation on private property rolls with the fluidity of Alaska's eroding shoreline or slips into the sea. On September 2, 1944, the Coast Guard established a navigational beacon at Point Mackenzie on the Knik Arm, a waterway adjacent to Anchorage, Alaska. The beacon was the first lighted, shore-based aid to navigation ("ATON") established in the area. The location came to be known as Lot 3, which is property now owned by Plaintiff Frederick D. Thoerner. According to Mr.

---

[1] *See* Dockets 18, 23.

Thoerner, Lot 3 consisted of 1.78 acres in 1950, but was just 0.80 acres by 2012, after the beacon had tumbled from the bluff sometime between November 2009 and August 2011.

In August 2011, U.S. Coast Guard personnel entered Mr. Thoerner's property without expressed permission, where they cut down up to forty-four trees and dug holes in preparation for rebuilding the ATON in a new location. Mr. Thoerner alleges that the Coast Guard's 2011 entry onto his property to reestablish the beacon was a trespass. The United States disagrees. It has moved for summary judgment asserting that "[t]he Coast Guard had maintained an implied easement on the property to access an Aid to Navigation (ATON) built in 1944, and continuously operating until 2011, on the land Mr. Thoerner bought in 2010. Thus, their presence and activities on the land in 2011 are recognized as permissible."[2] Mr. Thoerner responds that "that portion of property on which the Coast Guard previously operated ceased to exist when it eroded away and the Coast Guard cannot claim that it now has rights to additional lands that it was not previously using."[3]

The following facts do not appear to be in dispute. The original ATON was a small white wooden house on a concrete footing, with dimensions of 4' x 6' x 7'. The ATON's battery-powered lantern was approximately 11'5" above-ground. The Coast Guard recorded the latitude and longitude of the original ATON at 61° 14' 08" N, 149° 59' 34" W.

---

[2] Docket 13 (Mem.) at 2.

[3] Docket 18 (Opp.) at 2.

3:14-cv-00191-SLG, *Thoerner v. United States of America*
Order re Motion for Summary Judgment
Page 2 of 9

At the time the ATON was built, it stood on federal land.[4]  The ATON was noted on NOAA charts beginning in 1947.[5]

In 1950, the Bureau of Land Management ("BLM") surveyed Point Mackenzie in preparation to sell federal land to private buyers.  The notes of that survey recorded the ATON as the "Center of Point Mackensie [sic] Navigation light, which is on top of a 6 x 8 ft. battery shed, 7 ft. above the ground, bears S. 63° 40' E., 2.687 chs. dist.," measured from the "cor[ner] of sec[tions] 3, 4, 9, and 10," using steel tape made of chains of 66 feet.[6]  The United States points out, and Mr. Thoerner does not dispute, that "[t]he Coast Guard navigational light was observed to be located 177 feet to the southeast from the corner post.  In other words, the ATON was not on the edge of Lot 3 – it was 177 feet inside Lot 3."[7]

On July 3, 1955, BLM sold the property to James Koll and issued Patent Number 1152474.[8]  The patent does not mention the ATON or a federal need to maintain the ATON.  On September 7, 1955, Mr. Koll sold the property to David and Jean Ring.[9]

On September 21, 1966, the Commander, 17th District, U.S. Coast Guard sent a memorandum to Commanding Officer CGC Sorrel regarding "Point MacKenzie Light (LLNR 3428); special servicing instructions."[10]  That memorandum recorded that "when

---

[4] Docket 13-1 (USCG Report on ATON).

[5] Docket 13 (Motion) at 4.

[6] Docket 13-3.

[7] Docket 13 at 5.

[8] Docket 13-4.

[9] Docket 13-5.

[10] Docket 13-6 (Letter).

3:14-cv-00191-SLG, *Thoerner v. United States of America*
Order re Motion for Summary Judgment
Page 3 of 9

this light was recently rebuilt," Mr. Ring was "quite disturbed over the amount of tree cutting and general debris left on his property," and advised "[p]articularly check with Mr. Ring prior to cutting down any more trees in the Point MacKenzie vicinity." The memorandum also stated, "There is a clause in Mr. Rings title permitting the Coast Guard to maintain Point MacKenzie Light. However, it is preferred that this work be accomplished with Mr. Rings cooperation rather than his animosity."[11] A September 22, 1966 letter from the Commander to Mr. Ring states that "on 6 September 1966, Point MacKenzie Light was relocated approximately fifty feet inland. . . . The new light is located at latitude 61° 14.3' N., longitude 149° 59.0' W."[12]

Between May 5, 1998 and November 5, 2009, Coast Guard records indicate that the ATON was visited and serviced by Coast Guard personnel seven times.[13] Mr. Ring died in 2008. On June 23, 2010, the trustees of Mr. Ring's estate quitclaimed his interests in the property to Ms. Kimberly Morris and Mr. Thoerner.[14] Ms. Morris conveyed her interest to Mr. Thoerner by quitclaim deed on July 2, 2012, and Mr. Thoerner became the sole owner of Lot 3.[15]

At some point between November 5, 2009 and August 2011, the ATON "tumbled off the edge of the bluff."[16] On August 25, 2011, Bonnie Vaughn, the daughter of Mr.

---

[11] Docket 13-6.

[12] Docket 13-7.

[13] Docket 13-8 at 2.

[14] Docket 13-9.

[15] Docket 13-10.

[16] The United States asserts, without cited support, that this occurred on April 28, 2011. Docket 13 (Motion) at 6. But the affidavit of Bonnie Vaughn indicates that the ATON was "laying about seventy five percent of the way down the bluff" in May 2010. Docket 19 at 2.

3:14-cv-00191-SLG, *Thoerner v. United States of America*
Order re Motion for Summary Judgment
Page 4 of 9

Ring, "noticed trees had been cut off the bluff," and discovered men who identified themselves as Coast Guard workers "in the process of constructing the replacement ATON."[17] Ms. Vaughn indicates that when she "asked the Coast Guard who had given them authority to be on my families private property, they were unable to advise me under what authority they have entered upon the property."[18] Mr. Thoerner asserts, and the United States does not deny, that these activities included cutting down approximately forty-four trees varying in size from 3–23 inches in diameter and digging several large holes.[19]

On June 17, 2013, Mr. Thoerner made an administrative claim to the Coast Guard.[20] On April 8, 2014, the Coast Guard denied the claim.

Mr. Thoerner filed this action on October 2, 2014. The Complaint pleads the following causes of action: Mr. Thoerner asserts that the Coast Guard's entry onto his property constituted a trespass (Count 1); that the Coast Guard negligently damaged the property—"destroyed much of the native vegetation that is needed to stabilize the Property and protect the soils from eroding into the Cook Inlet" (Count 2); and that the Coast Guard's actions constituted a taking that requires just compensation (Count 3). Mr. Thoerner also seeks to quiet title to the property under Alaska Statute 09.45.010 (Count 4), and an order ejecting the United States from the property under Alaska Statute

---

[17] Docket 19 (Vaughn Aff.) at 2–3.

[18] Docket 19 at 3.

[19] Docket 1 at 3.

[20] Docket 1 at 2.

3:14-cv-00191-SLG, *Thoerner v. United States of America*
Order re Motion for Summary Judgment
Page 5 of 9

09.45.630 (Count 5).[21]  The United States filed its motion for summary judgment on March 27, 2015.[22]

**DISCUSSION**

Suits against the United States are barred for lack of jurisdiction unless the government expressly waived its sovereign immunity.[23]  The United States waived its sovereign immunity to suits involving title to land in 1972, with the passage of the federal Quiet Title Act ("QTA").[24]  Since then, the federal QTA provides the exclusive means by which adverse claimants can challenge the United States' title to real property.[25]  Accordingly, "if the Quiet Title Act does not apply, the district court does not have jurisdiction."[26]

Two conditions must exist before a district court can exercise jurisdiction over an action under the QTA: (1) the United States must claim an interest in the property at issue, and (2) there must be a disputed title to real property.[27]  The Act applies not only to traditional "quiet title" suits, but also when "the remedy sought pragmatically involve[s] some type of declaration as to the ownership rights of the parties."[28]  Any government

---

[21] *Id.* at 3–5.

[22] Docket 13.

[23] *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011).

[24] 28 U.S.C. § 2409a.  *See also Block v. North Dakota ex rel. Bd. of University and School Lands*, 461 U.S. 273, 280 (1983).

[25] *Block* at 287; *Leisnoi, Inc. v. U.S.*, 170 F.3d 1188, 1191 (9th Cir. 1999).

[26] *Leisnoi, Inc. v United States*, 170 F.3d 1188, 1191 (9th Cir. 1999).

[27] *Leisnoi*, 170 F.3d at 1191.

[28] *Robinson v. U.S.*, 586 F.3d 683 (9th Cir. 2009).

3:14-cv-00191-SLG, *Thoerner v. United States of America*
Order re Motion for Summary Judgment
Page 6 of 9

claim that "creates even a cloud" on the title may fall within the Act.[29] It encompasses, for example, claims for rights of access, easements, rights-of-way,[30] and ejectment.[31] The Ninth Circuit "has repeatedly held that both disputes over the right to an easement and suits seeking a declaration as to the scope of an easement fall within the purview of the QTA," and "a suit that actually challenges the federal government's title, however denominated, falls within the scope of the QTA regardless of the remedy sought."[32]

Here, both parties acknowledge that the United States claims an interest in Mr. Thoerner's property. The United States asserts that "[t]he Coast Guard had maintained an implied easement on the property to access an Aid to Navigation (ATON) built in 1944, and continuously operating until 2011…."[33] Mr. Thoerner responds that "[w]hile there may have been an implied easement in 1955 when the defendant conveyed Lot 3 to Mr. Koll, that portion of Lot 3 that would have been encumbered by that easement ceased to exist around 1966."[34] Because the United States claims an interest in the property at issue, the first requirement for application of the federal QTA is met.

---

[29] *Michel v. United States*, 65 F.3d 130, 132 (9th Cir. 2009).

[30] *Mills v. United States*, 742 F.3d 400, 405 (9th Cir. 2014).

[31] *McClellan v. Kimball*, 623 F.2d 83, 85–86 (9th Cir. 1980).

[32] *Robinson v. United States*, 586 F.3d 683, 686, 688 (9th Cir. 2009). *See also City of North Las Vegas v. Clark County, Nev.*, 2011 WL 3472481 at *6 (D. Nev. 2011) (a dispute over the scope of an easement will satisfy the requirement that there be a dispute over title to real property); *Beasley v. United States*, 2013 WL 1832653 at *4 (E.D. Wa. 2013) ("because the United States claims an interest in the real property at issue through the Easement, and because there is a dispute as to the scope of that Easement, the exclusive basis for subject matter jurisdiction is the QTA."). *But see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2205–08 (2012) (where the suit does not involve an adverse claim to title, the QTA may not provide the exclusive remedy).

[33] Docket 13 (Mot.) at 2.

[34] Docket 18 at 4.

3:14-cv-00191-SLG, *Thoerner v. United States of America*
Order re Motion for Summary Judgment
Page 7 of 9

Second, the title to Mr. Thoerner's land is disputed. The United States claims the title is subject to an implied easement held by the government that renders the Coast Guard's 2011 actions on the property "permissible."[35] Regardless of the merits of the United States' claim, this creates a cloud on Mr. Thoerner's title.[36] Mr. Thoerner alleges that these actions constituted a trespass which should be adjudicated under Alaska state law pursuant to the Federal Tort Claims Act.[37] But this puts the cart before the horse. It is not a trespass when the holder of an easement enters another's land within the scope of an easement.[38] And Mr. Thoerner may not prove a trespass, negligent damage to property, or a taking without compensation unless he first proves that the Coast Guard's 2011 actions on his property fell outside the scope of any implied easement. Therefore, the basis for the Court's subject matter jurisdiction in this controversy is the federal QTA.

Mr. Thoerner's Complaint seeks relief under Alaska's quiet title act, AS 09.45.010. But when it is the federal government's interest in the property that is at issue, as is the case here, state law is inapplicable and does not confer subject matter jurisdiction upon this Court. Accordingly, Mr. Thoerner's causes of action, all of which derive from Alaska's quiet title act, will be dismissed with leave to amend.[39]

---

[35] Docket 13 (Mot.) at 2.

[36] *See Kingman Reef Atoll Investments, L.L.C. v. United States*, 541 F.3d 1189, 1198 (9th Cir. 2008) (regardless of the merits of the United States' claim, acknowledgment that the United States claimed an ownership interest is sufficient for a claim to accrue under the QTA).

[37] *See* Docket 1 (Complaint).

[38] *See, e.g.*, *Matanuska Elec. Ass'n, Inc. v. Weissler*, 723 P.2d 600, 605 (Alaska 1986).

[39] The Court acknowledges that neither party addressed this issue in the summary judgment briefing. A party that is of the view that the Court has overlooked a material issue may file a motion for reconsideration of this Order pursuant to Local Rule (Civil) 59.1.

3:14-cv-00191-SLG, *Thoerner v. United States of America*
Order re Motion for Summary Judgment
Page 8 of 9

**CONCLUSION**

For the reasons set forth above, IT IS ORDERED that:

1. Mr. Thoerner's Complaint at Docket 1 is DISMISSED without prejudice and with leave to amend to seek relief under the federal Quiet Title Act, 28 U.S.C. § 2409a.

2. The United States' Motion for Summary Judgment at Docket 13 is DENIED as moot.

3. Mr. Thoerner shall have 28 days within which to file an amended complaint consistent with the terms of this order. If he fails to do so by that time, this action will then be dismissed.

DATED this 4th day of November, 2015.

                                        */s/ Sharon L. Gleason*
                                        UNITED STATES DISTRICT JUDGE

3:14-cv-00191-SLG, *Thoerner v. United States of America*
Order re Motion for Summary Judgment
Page 9 of 9